People v Newman (2020 NY Slip Op 02449)





People v Newman


2020 NY Slip Op 02449


Decided on April 24, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 24, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, TROUTMAN, AND BANNISTER, JJ.


1308 KA 15-01502

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
RYAN J. NEWMAN, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (HELEN SYME OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Christopher S. Ciaccio, J.), rendered May 27, 2015. The judgment convicted defendant upon a jury verdict of menacing a police officer or peace officer (two counts) and criminal trespass in the third degree. 
It is hereby ORDERED that the case is held, the decision is reserved and the matter is remitted to Monroe County Court for further proceedings in accordance with the following memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of menacing a police officer or peace officer (Penal Law
§ 120.18) and one count of criminal trespass in the third degree
(§ 140.10 [a]). The conviction arose from an incident in which uniformed sheriff's deputies responded to defendant's house after receiving a 911 call that defendant had entered another person's property, thrown a brick through a garage door window, and entered the garage without the owner's permission. Two deputies approached the front door of defendant's house, and one of the deputies knocked on the door and announced their presence. Defendant then opened the door holding a shotgun in the "low ready position" in the direction of the two deputies. According to the testimony at trial, defendant maintained that position for between 5 and 15 seconds while the deputies ordered him to drop the shotgun, after which he complied with the deputies' orders.
We agree with defendant that County Court erred in summarily denying his motion to set aside the verdict pursuant to CPL 330.30 (2) on the ground of misconduct during jury deliberations. "Generally, a jury verdict may not be impeached by probes into the jury's deliberative process; however, a showing of improper influence provides a necessary and narrow exception to the general proposition" (People v Maragh , 94 NY2d 569, 573 [2000]; see People v Brown , 48 NY2d 388, 393 [1979]). Improper influence encompasses "even well-intentioned jury conduct which tends to put the jury in possession of evidence not introduced at trial" (Brown , 48 NY2d at 393). Inasmuch as "juror misconduct can take many forms, no ironclad rule of decision is possible. In each case the facts must be examined to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered" (id. at 394). Where, as here, the alleged juror misconduct involves a reenactment, "the court must inquire whether the conduct in question was a conscious, contrived experiment rather than an application of everyday experience; whether it was directly material to a [critical] point at issue in the trial; and whether it created a risk of prejudice to the defendant by coloring the other jurors' views" (People v Pino , 264 AD2d 571, 572 [1st Dept 1999], lv denied 94 NY2d 906 [2000]; see People v Legister , 75 NY2d 832, 833 [1990]; Brown , 48 NY2d at 394-395). When presented with evidence of such conduct by the jury, the better practice is for the trial court "to hold a hearing in order to ascertain exactly what transpired, rather than to rely upon attorneys' affidavits concerning what" the jury may have done (People v Smith , 59 NY2d 988, 990 [1983]). Indeed, the trial court is vested "with discretion and posttrial fact-finding powers to ascertain and determine whether the activity during deliberations constituted misconduct and whether the [*2]verdict should be set aside and a new trial ordered" (Maragh , 94 NY2d at 574).
Here, in support of the motion, defendant submitted the affirmation of his attorney. Defendant's attorney alleged that, during post-verdict discussions with the jury, he learned that the jurors had attempted during their deliberations to determine whether defendant was aware that the people knocking at his door were sheriff's deputies by using the bathroom door in the deliberation room to reenact the moment when one of the deputies knocked on defendant's door and announced the deputies' presence. The court did not conduct a hearing and instead summarily denied the motion, ruling that, although the alleged jury reenactment constituted a conscious, contrived experiment that placed before the jury evidence not introduced at trial, the experiment was not directly material to any critical point at issue. That was error.
As defendant correctly contends, whether he could hear the announcement by the deputy was directly material to a critical point at issue in the trial—indeed, to an element of menacing a police officer—i.e., whether defendant "knew or reasonably should have known" that the people at his door were sheriff's deputies (Penal Law
§ 120.18; see Legister , 75 NY2d at 833; Brown , 48 NY2d at 394-395). We conclude under the circumstances of this case that a hearing is required to ascertain whether and in what manner the alleged reenactment occurred, and whether such conduct "created a substantial risk of prejudice to the rights of the defendant by coloring the views of the . . . jur[y]" (Brown , 48 NY2d at 394; see generally Smith , 59 NY2d at 990). We therefore hold the case, reserve decision and remit the matter to County Court for a hearing on defendant's CPL 330.30
motion.
Entered: April 24, 2020
Mark W. Bennett
Clerk of the Court